## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JENNY D. GROTE,             )
                                  )
                Plaintiff,      )
                                  )
v.                                )     Case No.  12-CV-1330-KHV-JPO
                                  )
BEAVER EXPRESS SERVICE, LLC,  )
                                  )
                Defendants.  )
_____)

### COMPLAINT

COMES NOW Plaintiff, Jenny D. Grote, by and though her counsel, Ray E. Simmons and Mark G. Ayesh of the Ayesh Law Offices, and for her causes of action against the Defendant Beaver Express Service, LLC, alleges and states as follows:

### PARTIES

1. Plaintiff, Jenny D. Grote, is an individual who is a resident of Kansas.

2. Defendant, Beaver Express Service, LLC, (hereinafter "Beaver Express") is a foreign limited liability company doing business in the state of Kansas and may be served with legal process through its registered agent: Bob Alderson, 2101 SW 21st Street, Topeka, KS 66604-3174.

### JURISDICTION AND VENUE

3. This is an employment case arising under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA" or "ADAAA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, *et seq.*, and the Employee Retirement Income

Security Act, 29 U.S.C. § 1001, *et seq*.  This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

4.      The unlawful practices and actions alleged below were committed within the state of Kansas, and Venue is properly laid in this Court by virtue of 28 U.S.C. § 1391(b).

5.      Plaintiff has fully exhausted her administrative remedies under Title VII and the ADA.   On July 23, 2012, Plaintiff received a right-to-sue letter from the EEOC. *Grote v. Beaver Express Services, LLC,* EEOC Charge No. 28D-2012-00066.

## FACTS

6.      Plaintiff was employed by Beaver Express at its Wichita, Kansas terminal, from January 3, 2006 to August 17, 2011.  Plaintiff began employment as an Administrative Assistant, paid an hourly rate of pay.  On September 1, 2010, Plaintiff was promoted to Office Manager.   At the time of her discharge from employment, Plaintiff was paid a salary of $500.00 per week.  Plaintiff regularly worked from 9:00 a.m. to 6:30 p.m., Monday through Friday, and usually worked between 45 -50 hours per week.

7.      Sometime in late 2010, Plaintiff began experiencing noticeable gastrointestinal problems.  Plaintiff's primary care physician did not immediately diagnose an illness and prescribed some anxiety medication.  Plaintiff found it difficult to schedule doctors' appointments because of staff shortages at work.

8.      Between April 4, 2011 and August 12, 2011, Plaintiff had multiple doctor appointments which ended with surgery in August.

2

9.     In June 2011, Plaintiff was diagnosed with Irritable Bowel Syndrome (IBS), gastritis, and hiatal hernia.  Plaintiff was prescribed medication for the IBS.

10.     On August 12, 2011, Plaintiff  was hospitalized for surgical removal of her gall bladder.

11.     During the period between April and August 2011, Plaintiff adjusted her medical appointments with her work schedule as follows:

| | | |
|---|---|---|
| Monday | 04/04/11 | Plaintiff went to the Emergency Room in the evening. She missed no work. |
| Tuesday | 04/05/11 | Plaintiff called in sick for the day due to illness. |
| Friday | 06/03/11 | Plaintiff had a medical appointment at 9:10 a.m.  She reported to work by 10:00 a.m. |
| Monday | 06/27/11 | Plaintiff had a colonoscopy and gastro-endoscopy. Plaintiff called in sick for the day. |
| Friday | 07/08/11 | Plaintiff had a medical appointment at 11:00 a.m. Plaintiff went in to work for an hour and one-half before the appointment.  She reported back to work by 12:00 p.m. |
| Thursday | 07/14/11 | Plaintiff was scheduled for a sonogram.  Plaintiff called in sick for the day. |
| Friday | 07/15/11 | Plaintiff had a medical appointment at 2:15 p.m.  She went in to work for two hours before the appointment. |
| Tuesday | 07/26/11 | Plaintiff had a medical appointment in the morning. She reported to work by 11:00 a.m. |
| Tuesday | 08/02/11 | Plaintiff had a medical appointment at 8:00 a.m. Plaintiff missed no work because she made up the time by working late. |
| Tuesday | 08/09/11 | Plaintiff had a preoperative medical appointment with the surgeon at 12:15 p.m.  She left work at 11:45 a.m. and returned to work by 1:30 p.m. |

3

| Friday | 08/12/11 | Plaintiff was scheduled for surgery.  She worked until 11:00 a.m. |
| Monday | 08/15/11 | Plaintiff was absent from work - Postoperative recovery.  Doctors authorized Plaintiff's return to work on Wednesday, August 17, 2011. |
| Tuesday | 08/16/11 | Plaintiff was absent from work - Postoperative recovery.  Doctors authorized Plaintiff's return to work on Wednesday, August 17, 2011. |

12.    On Wednesday, August 17, 2011, Plaintiff returned to work with a doctor's slip, because she was returning from sick leave of three or more consecutive days. Mike Austin, the Terminal Manager informed Plaintiff that she was being "let go due to economy and work quality."

13.    Approximately three weeks before her surgery, Plaintiff had been reprimanded for "attitude and attendance."  However:

A.    A few days before the reprimand, Plaintiff had complained to Allen Dunn, the Operations Manager, about a male employee's frequent and continued use of the "F-word" while in the office.

B.    Other than the above-stated medical absences in 2011, Plaintiff was only absent as follows:

•    April 18 - 22, 2011 (5 days) - Pre-approved vacation.

•    May 26 - 27, 2011, (2 days) - Pre-approved vacation in conjunction with Memorial Day weekend.

14.    During Plaintiff's employment, she had never been counseled about her work performance, nor was she aware of any issue in that regard.

15.    The Employee Handbook, § 4.8, provided that Plaintiff earned 10 working days off per year as vacation.

4

16.     The Employee Handbook, § 4.9, provided that Plaintiff was entitled to a leave of absence for health or personal reasons illness, serious illness or disability when they can show good cause.

17.     The Employee Handbook, § 4.12, authorized sick leave for employees who had worked for the Company for at least one year. Plaintiff complied with all of the requirements of the sick leave policy.

18.     The Employee Handbook, § 4.13, provided that Plaintiff was eligible for twelve weeks of Family and Medical Leave for her own serious medical condition that rendered her unable to perform her job duties.

19.     Throughout Plaintiff's medical treatment from April to August 2011, Plaintiff kept her supervisors and the management of Beaver Express advised regarding the results of each doctor visit or a diagnostic test that was performed. No one ever requested that Plaintiff fill out an FMLA leave request or a medical leave request or that she provide a medical care provider certification.

20.     The Employee Handbook, § 4.4 provided that Plaintiff was eligible for medical insurance. As a benefit of employment with Beaver Express, Plaintiff participated in a group healthcare insurance plan with Kansas Blue Cross Blue Shield (BCBS).  Under the plan, Plaintiff paid a percentage of the monthly premiums and Beaver Express paid the remainder.

21.     In March 2011, the owners and managers of Beaver Express were upset because of increased healthcare insurance costs.  The monthly BCBS premium that Plaintiff paid was increased from $59.32 to $77.64.  Plaintiff's annual deductible was increased from $1,000.00 to $1,500.00.  It was Plaintiff's understanding that the amount

5

Beaver Express paid to BCBS for its employees' healthcare insurance program was increased as well.

22.    For medical care provided to Plaintiff from April to August 2011, BCBS paid $4,435.08.  Through her annual deductible, co-payments and coinsurance, Plaintiff paid $2,166.71.

23.    On August 26, 2011, Plaintiff was advised that BCBS monthly premium under COBRA would range between $329.82 and $396.79, depending on the annual deductible she might select.

24.    Following her discharge from employment, Beaver Express informed potential employers with whom Plaintiff applied for employment that Plaintiff had excessive absences from work.

25.    Any absences that were considered to be excessive were related to Plaintiff's disabilities, and her use of FMLA leave as a result thereof, or her approved vacation.

### CAUSES OF ACTION

### *1.  FMLA - INTERFERENCE AND / OR RETALIATION*

26.    Plaintiff incorporates paragraphs 1 through 25 of this complaint.

27.    Plaintiff was employed by Beaver Express for a period exceeding one year and worked in excess of 1250 hours in the 12-month period preceding any FMLA leave request made by her.

28.    Plaintiff was entitled to FMLA leave because her own serious medical condition for which leave under the Act is authorized.

6

29.     Plaintiff properly followed Beaver Express' procedures relating to notice, requesting and designating FMLA leave.

30.     Beaver Express interfered with, restrained, and/or denied Plaintiff's entitlement to rights under the FMLA, to-wit: twelve workweeks of leave within the relevant fifty-two week period, (a) reprimanding Plaintiff for "attendance" and (b) by discharging Plaintiff from employment upon her return to work from FMLA leave.

31.     Beaver Express retaliated and/or discriminated against Plaintiff for using FMLA leave by (a) reprimanding Plaintiff for "attendance" and (b) by discharging Plaintiff from employment upon her return to work from FMLA leave.

32.     Plaintiff suffered damages and is entitled to an award of actual damages; liquidated damages, attorneys' fees, costs, and such other and further relief the Court deems just and proper.

WHEREFORE, pursuant to 29 U.S.C. § 2617, plaintiff prays for judgment against Defendant Beaver Express as follows:

A.     For wages, salary, employment benefits, or other compensation denied or lost to plaintiff; and

B.     For the interest on the amount requested above in ¶ A, calculated at the prevailing rate; and

C.     For an additional amount as liquidated damages equal to the sum of the amount requested above in ¶ A and the interest requested above in ¶ B; and

D.     For such equitable relief as may be appropriate, including employment, reinstatement, and promotion; and

7

E.     For reasonable attorneys' fees, expert witness fees, costs and such other and further relief the Court deems just and proper.

## 2.  ADA - FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS AND / OR WRONGFUL TERMINATION

33.     Plaintiff incorporates paragraphs 1 through 32 of this complaint.

34.     Plaintiff is a person with a disability because:

(a)     Plaintiff has a physical impairment that substantially limits one or more of Plaintiff's major life activities and/or the operation of one or more major bodily functions;

(b)     Plaintiff has a record of such an impairment; and/or

(c)     Beaver Express regarded Plaintiff as having such an impairment.

35.     Plaintiff was a qualified individual who, with or without reasonable accommodations, could perform the essential functions of the position in which she was employed.

36.     Beaver Express failed to provide reasonable accommodations to Plaintiff for her disability by failing to permit Plaintiff to use sick leave, medical leave and / or FMLA leave for her disability without discrimination or retribution.

37.     Beaver Express discharged Plaintiff from employment based upon an actual or perceived disability.

38.     Plaintiff suffered damages and is entitled to an award of damages for back pay and front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant Beaver Express for the following relief:

A.      For monetary damages in excess of $75,000 to compensate Plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future non-pecuniary loss;

B.      For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C.      For punitive damages;

D.      For Plaintiff's reasonable attorneys fees and the costs of this action;

E.      For any such other and further relief this Court deems just and proper.

F.      Plaintiff reserves the right to amend this Complaint or demand for judgment as new information is discovered during the course of this action.

### 3.  TITLE VII - RETALIATION

39.      Plaintiff incorporates paragraphs 1 through 38 of this complaint.

40.      Beaver Express unlawfully discriminated against Plaintiff because she opposed sexually offensive work environment by making a *bona fide* complaint to a member of management about the sexually offensive conduct of another employee.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant Beaver Express for the following relief:

A.      For monetary damages in excess of $75,000 to compensate Plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future non-pecuniary loss;

B.      For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C.      For punitive damages;

D.      For Plaintiff's reasonable attorneys fees and the costs of this action;

E.      For any such other and further relief this Court deems just and proper.

F.      Plaintiff reserves the right to amend this Complaint or demand for judgment as new information is discovered during the course of this action.

### 4. ERISA - INTERFERENCE AND / OR DISCRIMINATION

41.      Plaintiff incorporates paragraphs 1 through 40 of this complaint.

42.      Plaintiff was a participant in employee benefit plans which covered Beaver Express' employees, namely, vacation and healthcare insurance.

43.      Beaver Express discriminated against Plaintiff for exercising her right to approved vacation, by reprimanding Plaintiff for "attendance."

44.      Beaver Express discriminated against Plaintiff for exercising her right to use healthcare insurance which contributed to an increase in the employer's premiums, by terminating Plaintiff's employment.

45.      Beaver Express interfered with Plaintiff's rights to future benefits to which she might be entitled under the healthcare insurance by terminating Plaintiff's employment.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant Beaver Express for the following relief:

A.      To recover benefits due to her under the healthcare plan, or to clarify her rights to future benefits under the healthcare plan;

10

B.    To enjoin or obtain other appropriate equitable relief to redress the

unlawful discrimination and interference alleged herein; and

C.    For an award of reasonable attorney fees and costs.

Respectfully submitted,

AYESH LAW OFFICES

By: /s/ Ray E. Simmons
　　　Mark G. Ayesh, #10175
　　　Ray E. Simmons, #12296
　　　8100 East 22nd Street North
　　　Building 2300, Suite 2
　　　P. O. Box 781750
　　　Wichita, KS   67278-1750
　　　Telephone:  316-682-7381
　　　E-Mail: mayesh@ayesh.kscoxmail.com
　　　　　　　rsimmons@ayesh.kscoxmail.com
　　　　　　*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

## DESIGNATION OF TRIAL

Plaintiff designates Wichita, Kansas as the location for the trial in this matter.

By: /s/ Ray E. Simmons
　　　Mark G. Ayesh, #10175
　　　Ray E. Simmons, #12296