# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNY D. GROTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 12-1330-KHV |
| BEAVER EXPRESS SERVICE, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## **MEMORANDUM AND ORDER**

Jenny D. Grote brings suit against Beaver Express Service, LLC for violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. (Count 1); the Americans with Disabilities Act, as amended ("ADA" or "ADAAA"), 42 U.S.C. § 12101 et seq. (Count 2); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3 et seq. (Count 3); and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. (Count 4). Each count arises from the same alleged claim that defendant interfered with and denied plaintiff various rights, and retaliated and/or discriminated against her for exercising those rights by reprimanding her for attendance and terminating her employment.

This matter is before the Court on Beaver Express Service, LLC's Motion For Dismissal Of Plaintiff's Complaint (Doc. #7) filed October 15, 2012. Defendant moves to dismiss plaintiff's complaint because (1) plaintiff has not shown that it meets the statutory criteria for liability under the FMLA; (2) plaintiff's allegations regarding her ADA disability do not state a claim upon which relief can be granted; (3) plaintiff's Title VII retaliation claim fails because an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII; and (4) plaintiff's ERISA claims fail because her allegations are so sparse and conclusory that

they fail to meet the requisite pleading standards.[1] For the following reasons, the Court sustains in part and overrules in part defendant's motion to dismiss for failure to state a claim.

### **Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing her complaint with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when she pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678.

---

[1] In response, plaintiff asks that the Court allow her leave to amend her complaint in lieu of dismissal. She has filed no motion to that effect and has not attached a proposed amended complaint. See D. Kan. R. 15.1.

Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

Leave to amend is a matter committed to the sound discretion of the district court. See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127 (10th Cir. 1987). Rule 15(a)(2), Fed. R. Civ. P., provides that leave to amend "should be freely given when justice so requires." A district court should refuse leave to amend only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment. Wilkerson v. Shinseki, 606 F.3d 1256, 1267 (10th Cir. 2010). A proposed amendment is futile if the amended complaint would be subject to dismissal. Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007).

**Factual Background**

The complaint alleges the following facts:

Beaver Express employed plaintiff at its terminal in Wichita, Kansas from January 3, 2006 until August 17, 2011. Plaintiff began her employment as an administrative assistant and on September 1, 2010, defendant promoted her to office manager. At the time of discharge, plaintiff's salary was $500 per week. She usually worked between 45 and 50 hours a week, generally from 9:00 a.m. to 6:30 p.m.

Some time in late 2010, plaintiff began experiencing gastrointestinal problems. She had difficulty scheduling doctor appointments because of staff shortages at work, and her doctor did not

immediately diagnose the problem. Between April 4 and August 12, 2011, plaintiff had a number of doctor appointments. During that time she was diagnosed with irritable bowel syndrome (for which she received medication), gastritis and a hiatal hernia. On August 12, 2011, plaintiff was hospitalized for gall bladder surgery.

Between April 4 and the date of her surgery on August 12, 2011, plaintiff adjusted her work schedule to accommodate medical appointments. She was absent two full days and missed parts of five other days for medical appointments, and she was absent one full day for illness. She also was absent for seven days of pre-approved vacation. On August 12, 2011, the day of her surgery, she worked part of the day. She missed the following two work days and returned with a doctor's note on the third work day. Approximately three weeks before her surgery, plaintiff had been reprimanded for "attitude and attendance." A few days before the reprimand, plaintiff had complained to operations manager Allen Dunn about a male employee's "frequent and continued use of the 'F-word' while in the office." Complaint (Doc. #1) filed Sept. 6, 2012 ¶13A.

Plaintiff returned to work on August 17, 2011, five days after surgery. Upon her return, terminal manager Mike Austin informed plaintiff that she was being "let go due to economy and work quality." Id. ¶12. During her employment, plaintiff had never been counseled about work performance and she was aware of no performance problems. From April to August, when she was having health problems, plaintiff kept her supervisors and management apprised of the results of each diagnostic test and medical appointment. No one ever asked her to provide certification of medical care or to complete a leave request for either medical or FMLA leave. Following discharge, defendant informed potential employers that plaintiff had excessive work absences.

Defendant's employee handbook includes the following sections and corresponding provisions:

(1) Section 4.8 provides that plaintiff earned 10 vacation days annually.

(2) Section 4.9 provides that plaintiff was entitled to a leave of absence for health or personal reasons, illness, serious illness or disability upon showing good cause.

(3) Section 4.12 authorizes sick leave for employees who have worked for the company for at least one year.

(4) Section 4.13 provides that plaintiff was eligible for 12 weeks of Family and Medical Leave for her own serious medical condition that rendered her unable to perform her job duties.

(5) Section 4.4 provides that plaintiff was eligible for medical insurance.

Plaintiff complied with all requirements of the sick leave policy. Plaintiff participated in a group healthcare insurance plan for which she paid a percentage of the monthly premiums and defendant paid the remainder. In March of 2011, defendant's owners and managers were upset by increased healthcare insurance costs. Plaintiff's monthly premium for the group plan increased from $59.32 to $77.64, and her annual deductible increased from $1,000.00 to $1,500.00. Plaintiff believes that defendant's costs under the plan also increased. For the medical care she received from April to August of 2011, plaintiff paid $2,166.71 and the group healthcare insurance paid $4,435.08.[2]

## **Analysis**

Defendant asserts that plaintiff's FMLA claim fails because she has not made the requisite showing that Beaver Express meets the statutory criteria for liability under the FMLA. Defendant alleges that plaintiff's ADA claim fails because plaintiff's vague and conclusory allegations regarding her disability do not state a claim upon which relief can be granted. Defendant asserts that plaintiff's Title VII retaliation claim fails because under Tenth Circuit case law, an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed conduct which violates Title VII. Finally,

---

[2] Plaintiff's total includes her annual deductible, co-payments and coinsurance.

defendant contends that plaintiff's ERISA claim fails because her complaint is so skeletal and conclusory that it fails to meet the requisite pleading standards.

**I.      Count 1 – FMLA**

Plaintiff alleges that she was eligible for FMLA leave because she had been employed by Beaver Express for more than one year and had worked more than 1,250 hours in the 12 months preceding her request for leave. See 29 U.S.C. §§ 2612(a)(1)(D) and 2611(2)(A).[3] FMLA coverage, however, is subject to the so-called "50/75 rule."  The statute excludes those employers who have fewer than 50 employees, and an employee is not eligible for benefits if that person's employer employs fewer than 50 people within 75 miles of the employee's worksite. 29 U.S.C. § 2611(4)(A)(I), (2)(B).

Defendant's sole ground for dismissal of plaintiff's FMLA claim is that plaintiff does not allege that it employs 50 or more employees within 75 miles of its Wichita terminal. According to defendant, plaintiff's pleading therefore fails to show that she may obtain relief under the FMLA. Plaintiff submits that the 50/75 rule is an affirmative defense to be pleaded and proved by defendant, and she also contends that defendant is estopped from using the defense because defendant's employee handbook made affirmative representations pertaining to FMLA leave and did not notify her otherwise after she informed defendant of her serious health condition.

Plaintiff likens the FMLA to the Fair Labor Standards Act ("FLSA"), in which exemptions are affirmative defenses that the employer must plead and prove. See Clements v. Serco, Inc., 530 F.3d 1224, 1227 (10th Cir. 2008). Plaintiff's position has support in this district. See Cheek v. Edwardsville,

---

[3] An "eligible employee" is one who has been employed for at least 12 months and for at least 1,250 hours during the previous 12-month period. 29 U.S.C. § 2611(2)(A). An eligible employee is entitled to 12 workweeks of leave during any 12-month period because of a serious health condition that makes the employee unable to perform the employee's position. 29 U.S.C. § 2612(a)(1)(D).

-6-

514 F. Supp. 2d 1236, 1248-49 (D. Kan. 2007). In Cheek, the employer urged the Court to give the same meaning to the word "employee" under the FMLA and the FLSA. Before undertaking that analysis, however, the Court noted that the threshold question whether a plaintiff qualifies as an eligible employee is not jurisdictional, but is an element of plaintiff's claim for relief. Id. at 1247. The Court continued as follows:

> The FMLA states that the term "employee" has the same meaning given to that term in the . . . FLSA. . . . Thus, only those employees who would qualify as employees under the FLSA's definition of "employee" would also qualify as employees under the FMLA. . . . [T]o the extent that certain employees would fall within these exceptions under the FLSA, they would also be excluded from being considered employees for FMLA purposes.
>
> The problem with the City's argument based on the FLSA exceptions is that the City should have the burden of proving that these exceptions apply. Under the FLSA, an employer bears the burden of proving entitlement to any exemptions or exceptions. Although a plaintiff generally bears the burden of proving that he or she is an "eligible employee" for purposes of the FMLA's fifty-employee threshold, the FMLA expressly incorporates the FLSA's definition of "employee," thus implicitly incorporating the FLSA burdens of proof, as well. This, of course, is the most logical allocation of the burden given the employer's relative ease of access (as compared to the plaintiff employee's lack of available access) to information concerning the nature of its other employees' status.

514 F. Supp. 2d at 1248 (internal citations omitted). The Court thus agrees with plaintiff that defendant bears the burden of proving that the 50/75 rule renders plaintiff ineligible for FMLA benefits. Accordingly, the Court will not dismiss Count 1 on the ground that it fails to sufficiently allege the number of defendant's employees and their proximity to plaintiff's work location. Moreover, plaintiff's complaint alleges that defendant's employee handbook provided that she was eligible for 12 weeks of FMLA leave, and that defendant is estopped from asserting the 50/75 rule because the handbook made no mention of the rule. While the Court expresses no opinion on the merits of plaintiff's estoppel argument, the Court recognizes that through its conduct or words, an employer may be estopped from

asserting a defense of non-coverage. Sutherland v. Goodyear Tire & Rubber Co., 446 F. Supp. 2d 1203, 1210-11 (D. Kan. 2006);[4] see also Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 358-59 & n.36 (5th Cir. 2006) (summary judgment for employer reversed where employer memorandum erroneously represented employee was "eligible employee" and entitled to FMLA leave; footnote collecting FMLA estoppel cases); Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 723-25 (2d Cir. 2001) (summary judgment for employer reversed where genuine issue of fact whether employer equitably estopped from denying FMLA leave because it failed to post required notices); Reaux v. Infohealth Mgmt. Corp., No. 08 C 5068, 2009 WL 635468, at *3-4 (N.D. Ill. March 10, 2009) (denying motion to dismiss where 50/75 rule not satisfied but employee relied on employer handbook).

For these reasons, the Court overrules defendant's motion to dismiss with respect to Count 1.

**II.    Count 2 – ADA**

The ADA prohibits a covered entity from discriminating against a qualified individual on the basis of disability with respect to the terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). An employer may neither discriminate against an employee because of disability, nor fail to reasonably accommodate known physical or mental limitations of an otherwise qualified employee. Id. & (b)(5)(A). The ADA defines "disability" as follows:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment. . . .

---

[4] The Tenth Circuit has not addressed whether equitable estoppel applies in an FMLA action. Banks v. Armed Forces Bank, 126 F. App'x 905, 906 (10th Cir. 2005). Finding the reasoning of other circuits persuasive, however, Judge Carlos Murguia held in Sutherland that equitable estoppel may apply to claims of eligibility under the FMLA.

42 U.S.C. § 12102(1).

In Count 2, plaintiff invokes all three definitions of disability: she alleges that she has a physical impairment that substantially limits one or more major life activities and/or the operation of one or more major bodily functions; that she has a record of such impairment; and/or that defendant regarded her as having such an impairment. Doc. #1 at ¶ 34. In other words, plaintiff recites the statutory definitions of disability. She then states three alternative theories for relief: (1) she was a qualified individual who with or without reasonable accommodations could perform the essential functions of her position but defendant failed to provide reasonable accommodations by failing to permit her to use sick, medical and/or FMLA leave without discrimination or retribution; (2) defendant discharged her from employment based on an actual disability; or (3) defendant discharged plaintiff from employment based on a perceived disability. Id. ¶¶ 35-37.

To make a prima face case of failure to accommodate under the ADA, plaintiff must show that (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate her disability. Allen v. Southcrest Hosp., 455 F. App'x 827, 830 n.2 (10th Cir. 2011) (citation omitted). And to establish a prima face case of disability discrimination under the ADA relating to termination, plaintiff must show that at the time of termination (1) she was a disabled person as defined by the ADA; (2) she was qualified with or without reasonable accommodation to perform the essential functions of her job; and (3) defendant terminated her employment because of actual or perceived disability. Id. & 831 n.3.

Defendant asserts that plaintiff does not plausibly allege that she is entitled to relief on any of the three theories contained in Count 2. The Court will address each in turn.

### A. Failure To Accommodate

Defendant argues that plaintiff has not plausibly alleged that she is disabled, even if one broadly construes her complaint as alleging disability from her diagnosis of irritable bowel syndrome, gastritis and hiatal hernia in June of 2011, and/or from gall bladder surgery on August 12, 2011. See Complaint (Doc. #1) ¶¶ 9, 10. Plaintiff alleges no facts about these conditions and defendant submits that the mere mention of them does not sufficiently allege that plaintiff is disabled under the ADA. Similarly, defendant argues that plaintiff has not sufficiently alleged how her disability substantially limited an unidentified major life activity, nor has she alleged facts indicating that she requested an accommodation.

Plaintiff correctly contends that the law does not require her to provide a precise description of the major life activity which her disability allegedly affected. Allen, 455 F. App'x at 832 n.5 (in EEOC charge or complaint, plaintiff not required to provide precise description of major life activity allegedly affected by disability). Plaintiff alleges that she has irritable bowel syndrome for which she was prescribed medication, gastritis and hiatal hernia, and that her gall bladder has been surgically removed. Except to say that she had medical appointments and was sick for one day, however, plaintiff makes no mention of how these conditions affected her. To state a claim for relief, plaintiff must allege facts from which one can infer that one or more medical conditions substantially limited a major life activity such as seeing, hearing, etc. Plaintiff has not done so. Indeed, plaintiff asserts that she was ready to return to work within a very few days of having surgery. Plaintiff's allegations are circular and devoid of facts from which one might infer that plaintiff was actually disabled.

In addition, plaintiff does not allege that she notified defendant that she was disabled and therefore needed accommodations. Plaintiff states that she did not allege how her impairments substantially limited specific major life activities and/or major bodily functions because counsel "thought

that such specific allegations were unnecessarily redundant to the identity of the impairment." Doc. #9 at 11. In her response, plaintiff provides a Wikipedia description of irritable bowel syndrome but does no more than list the variety of symptoms generally associated with that medical condition. Plaintiff does not allege how her condition actually interfered with any major life activity or how her symptoms were disabling.

Simply reciting the statutory language or the elements of a cause of action does not equate to alleging facts that state a claim upon which relief may be granted. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The Court sustains defendant's motion with respect to plaintiff's claim for failure to accommodate.

### B. Termination On Basis Of Actual And Perceived Disability

Without further elaboration, Count 2 alleges that defendant discharged plaintiff from employment "based upon an actual or perceived disability." Complaint (Doc. #1) ¶37. As with plaintiff's accommodation claim, defendant argues that plaintiff has not stated a claim on the basis of actual disability because she has not plausibly alleged a disability that substantially affected one or more major life activities. The Court has considered this issue in the failure to accommodate claim in Count 2 and concluded that plaintiff's complaint is deficient.[5] Accordingly, the Court sustains defendant's motion with respect to plaintiff's claim that defendant terminated her employment on the basis of actual disability.

---

[5] Plaintiff asserts that limited leave for medical treatment may qualify as a reasonable accommodation. Case law supports her position. E.g., Smith v. Diffee-Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 967 (10th Cir. 2002). Contrary to her assertion, however, plaintiff's complaint does not allege that she sought such leave. See Response To Defendant's Motion To Dismiss (Doc. #9) at 13 (quoting paragraph 19 of complaint which states that plaintiff kept Beaver Express "advised regarding the results of each doctor visit or a diagnostic test that was performed").

In her third and final claim for relief under Count 2, plaintiff alleges that defendant terminated her employment because it perceived her as having an impairment. Plaintiff does not identify who had such a perception. Construing her complaint liberally, however, and assuming that supervisors and managers who were informed of plaintiff's medical appointments regarded her as impaired, plaintiff has alleged facts which demonstrate that she was terminated because of their perception.

Plaintiff's medical appointments began in early April of 2011, and defendant terminated her employment on August 17, 2011. Plaintiff argues that the temporal proximity between her use of medical leave, her reprimand for attendance three weeks before surgery and her termination upon her return after surgery create a reasonable inference that defendant regarded her as having a disability and took adverse employment action because of that perception. The Court agrees. Accordingly, the Court overrules defendant's motion with respect to plaintiff's claim that defendant terminated her employment on the basis of a perceived disability.

## III.     Count 3 – Title VII

To establish a prima facie claim for retaliation, plaintiff must show that (1) she engaged in opposition to an unlawful employment practice under Title VII; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected opposition and the adverse employment action. Zokari v. Gates, 561 F.3d 1076, 1081 (10th Cir. 2009).

Plaintiff's complaint contains two sentences' worth of allegations and contentions to support her claim that defendant unlawfully retaliated against her in violation of Title VII. They are as follows:

> 13A.  A few days before the reprimand [for attitude and attendance], Plaintiff had complained to Allen Dunn, the Operations Manager, about a male employee's frequent

-12-

>     and continued use of the "F-word" while in the office.[6]
>
>     * * *
>
>     40. Beaver Express unlawfully discriminated against Plaintiff because she opposed [a] sexually offensive work environment by making a *bona fide* complaint to a member of management about the sexually offensive conduct of another employee.

Complaint (Doc. #1). In other words, plaintiff alleges that her complaint about a co-worker's use of an offensive word was protected activity, that defendant terminated her employment because she engaged in that protected activity and that her termination therefore violated Title VII. Defendant argues that this count should be dismissed because as a matter of law, plaintiff's internal complaint fails to reach the threshold of protected activity.

A valid retaliation claim requires that an employee's complaint caused the employer to know that the employee has opposed an action of the employer and that the opposition was based on a belief that the employer's action constituted discrimination prohibited by Title VII. See Zokari, 561 F.3d at 1081. Plaintiff's complaint meets that standard. It specifies which member of management plaintiff informed of the offensive conduct, that the conduct occurred in the workplace and that it was frequent and continuous.

Plaintiff cannot establish a causal connection between protected opposition and adverse employment action unless the employer knew that the employee had engaged in protected opposition. Zokari, 561 F.3d at 1081. "The employer must know not only that the employee has opposed an action of the employer . . . , but that the opposition was based on a belief that the employer's action constituted discrimination prohibited by Title VII." Id. The Court infers that plaintiff believed the offensive conduct was discriminatory because otherwise plaintiff would not have complained of it.

---

[6] Plaintiff's surgery was approximately three weeks after her reprimand, and her termination followed her surgery by five days.

The Supreme Court has recently announced a new causation standard that applies to claims of unlawful employer retaliation under Title VII. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013). A plaintiff making a retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Id. at 2534. Plaintiff does not allege that she would not have been terminated but for her complaint. Although this Memorandum and Order concludes that plaintiff's motion to amend her complaint fails to comply with D. Kan. R. 15.1 (see infra), the Court will permit plaintiff to amend her Title VII claim to allege but-for causation because the Supreme Court announced this requirement after plaintiff filed her complaint.

The Court assumes that plaintiff did in fact complain about a co-worker's use of a word that she finds offensive. Aside from its causation allegations, plaintiff's complaint sufficiently states facts to withstand defendant's motion. Accordingly, the Court provisionally overrules defendant's motion with respect to the Title VII retaliation claim, subject to reconsideration if plaintiff fails to allege but-for causation in an amended complaint.

**IV.    Count 4 – ERISA**

In the final count of her complaint, plaintiff seeks relief under ERISA for both discrimination and interference in connection with employer-provided benefit plans. Plaintiff asserts three distinct claims for relief. Plaintiff first claims that as a participant in defendant's vacation and healthcare insurance plans, she had a right to approved vacation, and that defendant discriminated against her by reprimanding her for attendance. Plaintiff also asserts that by terminating her employment, defendant discriminated against her for exercising her right to use healthcare insurance which contributed to an increase in the employer's premiums. Finally, plaintiff contends that defendant interfered with her rights to future healthcare insurance benefits.

Section 510 of ERISA makes it illegal for an employer to discharge or discriminate against a participant for exercising any right to which she is entitled under the terms of an employee benefit plan or for the purpose of interfering with the attainment of any right to which such person may become entitled. 29 U.S.C. § 1140. To make a prima facie case of interference with ERISA benefits, plaintiff must allege that defendant was motivated to discriminate against or discharge plaintiff by a specific intent to interfere with employee benefits protected by ERISA. Trujillo v. Pacificorp, 524 F.3d 1149, 1160 (10th Cir. 2008); Michaelis v. Deluxe Fin. Servs., Inc., 470 F. Supp. 2d 1258, 1266 (D. Kan. 2007). Plaintiff must also allege that defendant's illegitimate motive was one of the factors in its decision to terminate plaintiff. Trujillo, 524 F.3d at 1160.

Defendant argues that plaintiff has provided nothing other than speculation that it terminated her employment because of her usage of ERISA benefits. Plaintiff notes that the Court has before it a motion to dismiss and not a summary judgment motion, thereby relieving plaintiff of the burden to prove motive at this stage. Plaintiff also correctly states that her claim is not subject to dismissal if she alleges a claim for relief that is plausible on its face. Plaintiff offers the following argument in support of her three ERISA claims:

> As [plaintiff] began incurring medical expenses, Blue Cross was increasing premiums to both the employer and the employee. Members of management were complaining about soaring healthcare costs. When plaintiff returned from medical leave, during which she incurred more medical expenses, she was immediately terminated.
>
> A reasonable inference can be made that Plaintiff['s] increased medical expense[s] were related to the healthcare insurance premium increases and that, combined with Plaintiff's need for time off for medical reasons caused management to sour on her employment, resulting in her termination.
>
> Response To Defendant's Motion To Dismiss (Doc. #9) at 20.

### A.    Discrimination For Use Of Vacation Benefits

Plaintiff's argument makes no mention of her claim that defendant discriminated against her for exercising her right to approved vacation by reprimanding her for attendance. The only factual allegation she makes with respect to that claim is that she was reprimanded for "attitude and attendance" approximately three weeks before surgery. Complaint (Doc. #1) ¶ 13. Plaintiff does not state what the reprimand entailed, whether she suffered any adverse employment consequence from it, who reprimanded her or any other facts from which the Court may infer support for her conclusory legal statement. A bare legal conclusion unsupported by factual allegations is insufficient to form the basis of a claim that defendant had specific intent to discriminate against plaintiff for using vacation days. Plaintiff's complaint does not state a claim for discrimination related to vacation benefits.

### B.    Discrimination For Use Of Health Care Benefits

Plaintiff alleges that in March of 2011, defendant's owners and managers were upset because of increased health insurance costs to both it and employees; that defendant's insurance company paid $4,435.08 in benefits for the medical care plaintiff received from April to August of 2011; that after having a series of medical appointments during that time, plaintiff ultimately underwent surgery on August 12, 2011; and that when she returned to work five days later, defendant terminated her employment. Based on the facts alleged, plaintiff's theory is plausible. Plaintiff alleges that defendant had never counseled her about work performance and that she knew of no problem with it, yet upon termination defendant told her that she was being "let go due to economy and work quality." Doc. #1 at ¶ 12. Plaintiff is entitled to use circumstantial evidence to support her claim, Newell v. Kmart Corp., No. Civ. A. 97-2258, 1998 WL 230966, at *4 (D. Kan. April 6, 1998), and it is entirely plausible that defendant terminated plaintiff's employment in the face of rising health care costs when she had

contributed to that increase. Defendant's motion is overruled with respect to this claim.

### C. Interference With Right To Future Health Care Benefits

Plaintiff's final ERISA claim is that defendant interfered with her rights to future health care benefits by terminating her employment. The Court infers that plaintiff was likely to incur additional expenses for continued treatment of the medical conditions she alleges. Under plaintiff's theory, she would have continued to receive group health insurance benefits, and defendant terminated her employment so as to avoid further increases in health insurance expenses for itself and other employees. The timing of plaintiff's termination supports her claim, as she had just returned from having surgery for which she used health care benefits, and removing her would prevent the plan from incurring additional medical expenses. See Herring v. Oak Park Bank, 963 F. Supp. 1558, 1569-70 (D. Kan. 1997) (timing may provide necessary inference of intent to interfere). This claim is equally plausible, and defendant's motion is also overruled with respect to this claim.

## V. Leave to Amend

The ultimate sentence in plaintiff's response to defendant's motion states that if the Court determines that the complaint is deficient, "Plaintiff moves the Court for leave to amend the Complaint to correct identified deficiencies." Response To Defendant's Motion To Dismiss (Doc. #9) at 22. Plaintiff does not attach a proposed amended complaint as required by D. Kan. R. 15.1. Neither does she describe how she would amend her complaint. Rule 15.1 requires that the moving party attach to the motion the proposed amended pleading. Compliance with this requirement is critical for the Court to assess the factors relevant in deciding a motion to amend, and to give the opponent an opportunity to review, evaluate and perhaps oppose the proposed amendments. Hammond v. City of Junction City, KS, Nos. 00-2146, 01-2602, 01-2603, 2002 WL 31545354, at *1 (D. Kan. Nov. 18, 2002). Because plaintiff

has not complied with the rule, the Court is unable to adequately assess whether to grant leave to amend. Accordingly, the Court denies plaintiff's request except that plaintiff may amend her complaint to allege but-for causation in her Title VII discrimination claim.

**IT IS THEREFORE ORDERED** that <u>Beaver Express Service, LLC's Motion For Dismissal Of Plaintiff's Complaint</u> (Doc. #7) filed October 15, 2012, be and hereby is **SUSTAINED** in part and **OVERRULED** in part. The Court **SUSTAINS** the motion with respect to: (1) the claims of failure to accommodate and termination on the basis of actual disability in Count 2; and (2) that portion of Count 4 which alleges discrimination related to vacation benefits. The Court **OVERRULES** the motion as to: (1) Count 1; (2) Count 2 claim of termination on the basis of perceived disability; and (3) the portion of Count 4 which alleges discrimination and interference with respect to health care benefits. The Court also **PROVISIONALLY OVERRULES** the motion as to Count 3, provided that plaintiff timely amends her complaint as described herein.

**IT IS FURTHER ORDERED** that plaintiff's request to amend her complaint be and hereby is **OVERRULED** in part and **SUSTAINED** in part. Within 10 days of the date of this Memorandum and Order, plaintiff may file an amended complaint only with respect to the but-for causation allegations of Count 3.

Dated this 15th day of August, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge